## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| CEDRIC BROOKS | : |
| 7414 Blue Jay Drive | : |
| Texas City, TX 77591 | :    CIVIL ACTION |
|     and | : |
| SAVANTE HUBBARD | :    No.: |
| 1704 Station Club Drive | : |
| Marietta, GA 30060 | : |
| | : |
|     Plaintiff, | :    **JURY TRIAL DEMANDED** |
|     v. | : |
| | : |
| REICH INSTALLATION SERVICES, INC.: | |
| W237N2920 Woodgate Rd, Ste. 200 | : |
| Pewaukee, WI 53072 | : |
| | : |
|     Defendant. | : |

_____:

## CIVIL ACTION COMPLAINT

Cedric Brooks and Savante Hubbard, (*hereinafter* referred to collectively as "Plaintiffs," unless indicated otherwise), by and through their undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      This action has been initiated by Plaintiffs against Defendant for violations of 42 U.S.C. §1981 and the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1, *et. seq*.). Plaintiffs assert, *inter alia*, that they were unlawfully discriminated against, retaliated against, and terminated from their employment in violation of state and federal law(s). As a direct consequence of Defendant's unlawful actions, Plaintiffs seek damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes.  There would separately lie jurisdiction under § 1332, as there is

complete diversity of Parties. All Parties to this lawsuit are citizens, domiciliaries and residents of different states, and Plaintiffs are seeking in excess of $75,000.00 *exclusive of costs and interest*.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this State and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey for this action.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiffs are adult individuals, with addresses as set forth in the caption.

7.      Reich Installation Services, Inc. (hereinafter, "Defendant") is headquartered in Wisconsin and provides services nationally to companies all over the United States. Respondent primarily installs custom, automated equipment and systems in large corporations such as Walmart, Supervalu, BMW, IKEA, FedEx, and other similar commercial entities.

8.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.      Plaintiffs are both black (African-American) males.

11.      Defendant is a company that is hired by third-party businesses to install very comprehensive electronic, conveyer and other systems throughout physical complexes and warehouses. Such projects are not short term and can span months to a year depending upon complexity.

12.      Within the Northeastern United States, Defendant was operating and overseeing two (2) very significant commercial and long-term installation / construction projects. One such project was taking place in New Castle, Delaware ("the DE project"). And the other project was taking place in Penns Grove, New Jersey ("the NJ project").

13.      Plaintiff Hubbard was hired by Defendant effective on or about May 4, 2021, and Plaintiff Brooks was hired by Defendant effective on or about May 25, 2021.

14.      Both Plaintiffs relocated from different states to work for Defendant, as they were both led to believe that their respective periods of employment were: (a) long-term; and (b) they could move from state-to-state with continued employment on new and continuing projects.

15.      Plaintiff Brooks came from Texas to work for Defendant, and Plaintiff Hubbard came from Georgia to work for Defendant. They were both hired initially at a rate of $18.00 per hour with assurances they could have a very good future with Defendant as a growing business.

16.      Upon hire, both Plaintiffs initially were placed on the DE project. While working in Delaware, both Plaintiffs were laborers assisting with installation at a third-party site. Plaintiffs worked for Defendant in Delaware during the first approximate half of their employment.

17.     Both Plaintiffs are very hard workers and expected that they would work in a collegial and labor-intensive (but generally fair) work environment. But instead, both Plaintiffs were subjected a very discriminatory work environment.

18.     What both Plaintiffs experienced upon commencing work within Respondent was nothing like they had ever seen, nor experienced. In particular:

    i.   Defendant let a Hispanic employee named Alex Guerro ("Alex") as Project Manager manage the work environment and give all necessary directives;

    ii.   Nearly the entire workforce of Defendant was Hispanic (with the workforce being at least 50-75 people at any given time). There was almost no non-Hispanic representation in the workforce; and

    iii.   Alex held daily meetings and only communicated to the workforce in Spanish, and primarily only spoke Spanish during any meetings. Plaintiffs could barely understand what was expected of them at times, nor could they understand protocols or safety instructions being given by Alex. Non-Hispanic employees were entirely disregarded.

19.     Both Plaintiffs in total were only employed from May of 2021 through mid-July of 2021 (a period of less than 3 months) until being terminated on the same day (as explained in detail, *infra*). They were terminated from Defendant <u>in New Jersey</u> through, also as explained below. *Plaintiffs had exclusively worked from and been terminated from New Jersey while working during the second half of their employment*.

20.     While working for Defendant at the DE project, there was nothing short of an exceptionally racist culture and environment. More specifically:

    i.   Hispanic employees laughed around Plaintiffs, as at times encouraged by Alex;

    ii.   Alex was really nasty to Plaintiffs, short, and made it clear he did not want them around. Alex also at times compared Plaintiffs to Hispanic employees telling them his people work harder;

    iii.   Derogatory comments were made about non-Hispanics in Spanish, including by Alex (and other Hispanic employees, as the culture was perpetuated); and

iv.   Alex also refused to translate in English discussions he was having at meetings or in the workplace, literally laughing or walking away when non-Hispanic employees such as Plaintiffs requested translation or information.

21.   Both Plaintiffs complained of discrimination in the workplace, as follows:

i.   Plaintiff Brooks confronted Alex and complained to him that he was told by another Hispanic employee Alex was calling him a "nigger" in Spanish. When Plaintiff confronted Alex about his racial language concerning him, Alex did not deny using such a phrase and just told Plaintiff Brooks to return to work. Plaintiff Brooks had also expressed unfairness towards non-Hispanics and the lack of equal treatment with directions or meetings in English.

ii.   Plaintiff Hubbard complained to Alex and escalated concerns to upper management verbally and in an e-mail that there was different treatment towards Hispanics and non-Hispanics were not getting safety or work information in English.

22.   Alex very angrily confronted Plaintiff Hubbard stating "you called the office on me." Alex had become exceptionally hostile towards both Plaintiffs (more so than prior to their complaints). Shortly thereafter, both Plaintiffs were transferred to the NJ project where they worked until termination.

23.   Not long after both Plaintiffs were transferred to the NJ Project, Alex then was moved by Defendant to the NJ project. At the NJ Project, the workforce was similarly and primarily Hispanic.[1]

24.   Both Plaintiffs were then terminated in mid-July and told by Alex that they were being terminated because the NJ Project was coming to an end. Both Plaintiffs were 2 of 4 black employees terminated simultaneously (making the entire workforce virtually Hispanic and lacking black representation).

---

[1] It is unclear if Alex was moved to New Jersey by Defendant because of other complaints of discrimination or for a legitimate business reason, as numerous other non-Hispanic employees expressed concerns of discrimination prior to their respective terminations.

25.     Right after Plaintiffs and 2 other black employees were terminated by Alex in New Jersey, Alex hired 4 Hispanic employees (as information and pictures were sent to Plaintiff illustrating the new hires). Hence, there was no lack of work (rendering Plaintiffs' terminations a complete pretexts). Separately, Alex had literally terminated the 4 black employees in favor of hiring 4 Hispanic employees.

26.     Following their respective terminations, Plaintiff came to learn that numerous others experienced blatant racism within Defendant (by Alex). By way of examples only:

i.   An employee named Nick Napadano had filed a Charge with the Equal Employment Opportunity Commission ("EEOC") for racial discrimination by Alex and for being terminated after complaining of discrimination; and

ii.  An employee named Alamin Abdul Jabbar had filed a Charge with the Equal Employment Opportunity Commission ("EEOC") for being called a "nigger" by Alex and being forced to quit because Alex caused him not to be paid for nearly 5 weeks.

27.     In addition to the above, Alex continually used racial language such as calling black people "miete" (which means "shit" in Spanish) and white people Gringos. However, he used *actual names* when referring to Hispanic employees.

28.     Plaintiffs were both terminated while working for Defendant in New Jersey for racist and retaliatory reasons, after being subject to a hostile work environment for the duration of their respective periods of employment.

29.     Anyone in the workplace of Defendant who was not Hispanic generally experienced very substantial discrimination. And Defendant, in the interest of cheap labor and continuity of work performance, recklessly failed to protect or prevent discrimination against non-Hispanics.

**Count I**
**<u>Violations of 42 U.S.C. § 1981</u>**
**(Discrimination, Hostile Work Environment, and Retaliation)**

30.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31.     Plaintiffs were terminated because of their race, national origin, and complaints of racial discrimination.

32.     These actions as aforesaid (in addition to creating a hostile work environment), constitutes violations of 42 U.S.C. § 1981.

**Count II**
**<u>Violations of the New Jersey Law Against Discrimination ("NJ LAD")</u>**
**(Discrimination and Retaliation)**

33.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34.     Plaintiffs were terminated because of their race, national origin, and complaints of racial discrimination.

35.     These actions as aforesaid (in addition to creating a hostile work environment), constitutes violations of the NJ LAD.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.     Plaintiffs are to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.     Plaintiffs are to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.     Plaintiffs are to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.     Plaintiffs are to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:     _____
         Ari R. Karpf, Esq.
         3331 Street Road
         Two Greenwood Square, Suite 128
         Bensalem, PA 19020
         (215) 639-0801

Dated: August 9, 2021